C. D. QUICK, Appellant, v. ALFRED COTMAN, PERRY COT-
MAN, and ELLA PERKINS, Appellees.

**Highways:** DEDICATION: EVIDENCE. Evidence in an action to enjoin
1 the obstruction of a claimed public way is considered and held
insufficient to show a dedication of the land to public use, or such
use as gave the public a prescriptive right therein.

**Evidence:** RES GESTÆ. Declarations of one showing his intent in hav-
2 ing a lane opened over his land are admissible as part of the *res
gestæ;* as are the statements of another as to the character of the
lane, made while in possession thereof.

**Estoppel.** When one pays the purchase price of land knowing the
3 private character of a lane leading thereto, and states that such
fact made no difference with his purchase, he will not be heard
to assert that it was a public highway.

*Appeal from Warren District Court.*—HON. JAMES D.
GAMBLE, Judge.

THURSDAY, APRIL 14, 1904.

SUIT in equity to enjoin defendants from obstructing a
public highway. Defendants denied that any such highway
existed as claimed by plaintiff, and asserted that plaintiff's
grantor had a mere lincense to use part of defendants' land,
which license was at all times revocable, and expired when he
sold the land to plaintiff. The trial court dismissed plain-
tiff's petition, and he appeals.— *Affirmed.*

*H. H. Crow,* for appellant.

*Henderson & Henderson,* for appellees.

DEEMER, C. J.—Plaintiff is the grantee of one William
Crow. He claims that a public highway running north and
south through the center of the north half of the northeast

quarter of a certain section of land in Warren county, Iowa,
extending from a highway running east and
west along the north side of said eighty acres
of land, and terminating near the north bank of "North
river," is being obstructed by the defendants at the north end
thereof.   His contention is that this highway was established
by dedication and prescription.   The defendants' father and
William Crow for many years owned adjoining tracts of land.
The alleged highway is over the land now owned by defend-·
ants, which was north of that now owned by plaintiff, and
between it and the public highway.   After Crow obtained
title to his land, he set a fence back from the east line thereof
so as to leave a lane from a point somewhat south of his house
up to the land owned by defendants' father.   At that time the
land upon which the highway is now claimed to exist was un-
inclosed, and Crow reached the highway by passing over this
uninclosed and uncultivated land.   This condition continued
until about the year 1873, when defendants' father fenced his
land, which lay immediately north of that belonging to Crow.
Cotman, defendants' father, put a gate in his fence on the
north line of his land abutting on the highway, and Crow
still passed over the land to reach the highway.   Some time
thereafter Cotman and Crow made an oral agreement where-
by a lane connecting with that made by Crow on the east side
of his land was continued over Cotman's land to the highway.
Cotman built the fence on one side of this lane, and Crow on
the other.   A gate was erected on the north end of this lane
at the time it was established, which was maintained for a
few years, but was afterward broken down, and was not there-
after reconstructed.   Some time after this lane was thus
established, a coal bank was opened on Cotman's land near
the south end of the land, and a gate was put in the fence in
order to reach this mine.   There was also a mine opened on
Crow's land nearly opposite that on Cotman's land, and this
was also reached by a gate through the lane fence.   Some
houses were built near these coal mines, and a party who

1. HIGHWAYS:
dedication;
evidence.

owned some land south of Crow's also erected a house, and by Crow's permission passed over his land and into the lane, using it as a means whereby to get to the highway to the north. Large amounts of coal were hauled from the mines to which we have referred, through the lane, to the highway, and persons desiring to reach Crow's house used it as a thoroughfare. Cattle occasionally passed down this lane to the river bottom. It was also used by the party who lived south of Crow in the manner heretofore stated. This lane averaged a little over twenty-six feet in width. No work was ever done upon it by the public except at the south end thereof, which was wholly on Crow's land, and part of this was done at his (Crow's) request. Cotman always objected to having any work done on that part of the lane crossing his land, for the express reason that by permitting it he feared the public would claim some right thereto. The evidence shows that Cotman gave Crow parol permission to use this lane to get to the highway, but that he always and at all times insisted that it was not a public highway, and was careful to see that no work was done thereon by the public authorities. Crow at one time purchased a strip of ground two rods and a half wide connecting his land with the public highway, for the avowed purpose of having an outlet to the highway, and he never at any time prior to the death of Cotman claimed that the lane was anything other than a private way to reach the highway. That he regarded it as a personal privilege or license terminable at any time is evidenced by the fact that he purchased an outlet to the highway which he never opened, because he was not deprived of this lane while he owned the land. Plaintiff, as grantee of Crow, purchased the land believing he had the right to use the lane to get to the highway, but, before paying for it, was informed that the way was a private one or a mere privilege to his grantor, Crow, and he says that he should have taken the land just the same. He also testified that he acquired the strip which Crow had purchased for an outlet, and that this gave him access to the

public highway, although a little more inconvenient than the lane. Crow never paid anything for the lane over Cotman's land, although he was at some expense in erecting a fence on the west side thereof and in placing a gate therein.

Under this state of the record it is clear that there was no dedication of the land to public use. At most there was nothing more than a parol agreement for a private right of way for Crow. While the lane was used for the purposes already indicated, it is clear that the public did not use it in such manner as to acquire any prescriptive rights therein. That part of the public which desired to reach the coal mines or to go to Crow's house passed over it. A few cattle went that way, and some of the coal miners, who lived in the houses near the mines, used it to reach the highway to the north. Whenever the public attempted to assert any rights therein, Cotman and his successors in interest interfered, and would not permit any such show of authority over the lane by the public authorities as to indicate that they had assumed any jurisdiction over the same. It connected no lines of travel, and was solely used as before indicated. The case seems to be ruled, so far as the claim of public highway or easement is concerned, by *State v. Tucker,* 36 Iowa, 485, which is almost directly in point. See, also, *Fairchild v. Stewart,* 117 Iowa, 734; *Friday v. Henah,* 113 Iowa, 425. The existence of the coal banks near the south end of the lane and the use made of it by the purchasers of coal clearly indicate that these persons were mere licensees of the lane, and the use thereof by these persons should not be considered as adverse either as to Cotman or to Crow. The situation of Crow's house, and the use made of the lane by the public in reaching this house, might under some circumstances tend to show either a dedication to the public or a prescriptive right therein. But not so here, where the evidence is that such use was merely permissive, and that Crow had himself purchased another outlet to the highway.

It is claimed that declarations made by Crow and Cot-

man are not admissible in evidence as showing their intent with reference to this land. Little, if any, of this testimony was objected to when it was introduced, and the objections made do not cover the ground now argued. But we think such evidence was admissible, especially that showing Cotman's intent in leaving the land open for use. Such statements were verbal acts throwing light on his intent in giving Crow the use of the land. They were part of the *res gestæ* and therefore admissible. Crow's declarations made at a time when he was in possession of the strip, and before he had conveyed the same to plaintiff, were also admissible in evidence. See cases cited in Am. & Eng. Ency. of Law (2d Ed.), vol. 9, page 39.

*2. EVIDENCE: declarations; res gestæ.*

Plaintiff's claim of estoppel, based upon his purchase of the property from Crow, believing that the lane was a highway, is without foundation either in fact or law. He received notice of the exact character of the lane before he paid the purchase price, and said that he would have bought whether the lane was a highway or not. That settles plaintiff's contention that the lane is a public highway, and calls for an affirmance of the decree. Had plaintiff in his petition or in his argument claimed that this lane was a private right of way appurtenant to Crow's land, and that it passed to him as such in virtue of Crow's conveyance, we should have had a different case — one much more difficult of satisfactory solution. There is much to indicate that this was a private right of way appurtenant to Crow's land, and not in gross; that it passed to plaintiff by deed; that it was acquired by prescription, and could not be closed by the defendants. Even if it had been a license, there might be ground for holding that this license, because of the expense which Crow went to in building fences, etc., was irrevocable. There are, it is true, some matters which show that it was a mere privilege or license, which Cotman reserved the right to revoke at any time. However, as plaintiff's

*3. ESTOPPEL.*

counsel make no claim to it as a private way, we need not
concern ourselves over this question.

The case, as it is presented to us, seems to be ruled by
the authorities already cited, and, as our views are in accord
with those of the district court on the issues presented, the
decree must be, and it is, AFFIRMED.